IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-695-FDW-DCK

| NWR CONSTRUCTION, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | **ORDER** |
| v. | ) | |
| SCHINDLER ELEVATOR CORPORATION, | ) | |
| Defendant. | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion To Compel Arbitration And Stay Proceedings" (Document No. 15). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for disposition. Having carefully considered the motion and the record, the undersigned will grant the motion.

## BACKGROUND

NWR Construction, LLC ("Plaintiff" or "NWR") "acted as general contractor for the construction of 500 W. Trade (the "Project"), a luxury apartment community in uptown Charlotte." (Document No. 1-2, p. 2). On or about September 20, 2019, NWR entered into a Subcontract Agreement (the "Subcontract") with Schindler Elevator Corporation ("Defendant" or "Schindler") "pursuant to which Schindler agreed to complete elevator scope work for 500 W. Trade, which included design, supply and installation of four elevators." Id. Plaintiff NWR alleges that the elevators installed by Defendant failed to perform as they should have, and that Defendant "has failed and refused to adequately repair or replace the Elevators." (Document No. 1-2, pp. 3-4).

Plaintiff filed a "Complaint And Motion To Stay Pending Arbitration" (Document No. 1-2) (the "Complaint") on or about June 7, 2024, in the Superior Court of Mecklenburg County,

North Carolina. Plaintiff asserts claims for: (1) breach of Subcontract; (2) breach of maintenance agreement; (3) negligence; (4) negligent misrepresentation; and (5) unfair and deceptive trade practices. (Document No. 1-2, pp. 4-9). The Complaint also moves for a stay pending arbitration. (Document No. 1-2, pp. 9-11). The Complaint alleges that:

> The Subcontract between NWR Construction and Schindler provides that "[a]ny claim or dispute between [Schindler] and [NWR Construction] shall, at the sole option of [NWR Construction] be determined in accordance with any disputes procedure set forth in the Contract Documents or, at the sole option of Contractor, by litigation or binding arbitration in accordance with the American Arbitration Association's ("AAA") Construction Industry Arbitration Rules ...."

(Document No. 1-2, p. 10); see also (Document N. 17-1, p. 10).

Defendant filed a "Notice Of Removal" (Document No. 1) with this Court on July 29, 2024. Defendant contends that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. (Document No. 1, p. 2). On August 27, 2024, Defendant filed a "Motion To Dismiss" pursuant to Fed.R.Civ.P. 12(b)(6) regarding "Plaintiff's claims for negligence, negligent misrepresentation, and unfair and deceptive trade practices." (Document No. 15). The motion to dismiss is ripe for disposition but has not been referred to the undersigned Magistrate Judge.

"Plaintiff's Motion To Compel Arbitration And Stay Proceedings" (Document No. 15) was filed September 9, 2024. The "...Motion To Compel..." has been fully briefed and is ripe for review disposition. See (Document Nos. 16, 17, 21, and 23).

## STANDARD OF REVIEW

The FAA represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." Moses H. Cone Mem'l Hosp. v.

2

Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  Under Section 2 of the FAA, a written arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Furthermore, the Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) a relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016);  see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015).

"Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration."  Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2011).  Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation.  Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 81 (2000).

## DISCUSSION

By the instant motion, Plaintiff contends that "[a]ll claims alleged in the Complaint are subject to arbitration" and seeks "an order compelling all claims to arbitration and staying all further proceedings in this action." (Document No. 15, pp. 2-3).  In support of its motion Plaintiff argues that all four (4) of the prerequisites for an order compelling arbitration have been met. (Document No. 16, pp. 4-8).  See also Galloway, 819 F.3d at 84;  and Rubicon Research Private

3

Ltd. v. Kartha Pharm. Inc., No. 3:21-CV-129-MOC-DCK, 2021 WL 4233887, at *2 (W.D.N.C. Sept. 16, 2021).

First, Plaintiff notes that the parties entered into the Subcontract and that Plaintiff alleges "latent defects in Schindler's work under the Subcontract, misrepresentations inducing Plaintiff to enter the Subcontract in the first place, and misleading statements made by Schindler as to a plan of repair, all of which Schindler has denied." (Document No. 16, p. 5). Based on the foregoing, Plaintiff states that "[t]here clearly exists a dispute between Plaintiff and Schindler relating to Schindler's work on and relating to the Elevators." Id.

Second, Plaintiff contends that the requirement for a written agreement to arbitrate has been satisfied. (Document No. 16, pp. 5-6). Plaintiff notes that the parties' Subcontract provides as follows:

> [a]ny claim or dispute between [Schindler] and [NWR Construction] shall, at the sole option of [NWR Construction] be determined in accordance with any disputes procedure set forth in the Contract Documents or, at the sole option of [NWR Construction], by litigation or binding arbitration in accordance with the American Arbitration Association's (AAA) Construction Industry Arbitration Rules, then in effect . . . .

(Document No. 16, p. 5) (quoting Document No. 17-1, p. 10).

Plaintiff also asserts that to the extent there is any dispute about the arbitrability of its claims, the Subcontract adopts the Construction Industry Arbitration Rules of the American Arbitration Association, which "'clearly and unmistakably' submit[] the issue of arbitrability to the arbitrator." (Document No. 16, p. 7) (citations omitted).

Third, Plaintiff argues that it has satisfied its obligation to show the relationship of the transaction to interstate or foreign commerce. (Document No. 16, pp. 7-8) (citations omitted). Specifically, Plaintiff asserts the following:

> Here, the Project was located in Charlotte, North Carolina. (ECF 1-2 ¶ 3.) Schindler is a Delaware corporation with a principal place of business in Morristown, New Jersey. (ECF 1 ¶ 12.) And the elevator scope of work and overall construction Project incorporated labor and materials from multiple states. (Wilson Decl. ¶ 7.) All of these are sufficient to find that this transaction involves commerce within the meaning of the FAA.

Id.

Fourth, and finally, Plaintiff argues that the criteria that there has been a failure, neglect, or refusal of a party to arbitrate, has been satisfied. (Document No. 16, p. 8). Plaintiff notes that it filed this action to preserve its claims against Schindler and sought a stay of proceedings and an order to arbitrate. Id. (citing Document No. 1-2). Defendant Schindler refused to arbitrate, removed the action to this Court, and now opposes the instant motion to compel arbitration – thus satisfying the requirement that there be a failure or refusal to arbitrate. Id.

In response to the pending motion, Defendant suggests that the motion to compel should be denied because "the arbitration clause is illusory and unenforceable, because it empowers Plaintiff to unilaterally choose to arbitrate or litigate." (Document No. 21, p. 1) (citations omitted). Defendant notes that:

> Section 7 of the Subcontract provides that only Plaintiff has the power to determine whether a claim shall be referred to arbitration or shall be pursued in litigation. Section 7 does not permit Schindler to compel arbitration even if it desired to do so. Whether any particular claim will be determined in an arbitration forum or in a litigation forum is completely and totally within the control of Plaintiff to decide, and Section 7 does not even provide guidance for when Plaintiff must make that determination.

(Document No. 21, pp. 4-5); see also (Document No. 17-1, p. 10).

Defendant argues that "where one party reserves the right to modify or abolish an arbitration agreement unilaterally, it is not enforceable." (Document No. 21, p. 5) (citing Coady v. Nationwide Motor Sales Corp., 32 F.4th 288, 293 (4th Cir. 2022)). Defendant further asserts

that "[m]utuality of obligation is essential to the enforcement of arbitration agreements." (Document No. 21, p. 6).

Defendant concludes that it cannot be compelled to arbitrate a claim that it has not agreed to arbitrate; "[u]nder the law, this provision constitutes an illusory promise, which cannot be legally enforced." (Document No. 21, p. 7).

"Plaintiff's Reply..." argues that Defendant's opposition relies "on inapplicable state law from other jurisdictions." (Document No. 23, p. 1). According to Plaintiff, North Carolina law "does not require mutuality of obligation in arbitration agreements." Id. (citing Senior Mgmt., Inc. v. Capps, 240 F.App'x 550, 552 (4th Cir. 2007)).

In support of its position, Plaintiff NWR notes that Defendant Schindler only contests the second prerequisite for an order compelling arbitration – the existence of an enforceable agreement to arbitrate. (Document No. 23, p. 2). Plaintiff then notes that North Carolina law is applied in this case because "[t]he Subcontract between NWR Construction and Schindler expressly provides that it shall be interpreted and applied in accordance with North Carolina law." Id. (citing Document No. 17-1, p. 13).

Plaintiff goes on to explain that under North Carolina law, arbitration clauses allowing only one party to elect arbitration are enforceable. (Document No. 23, p. 3). Plaintiff includes the following instructive analysis of relevant caselaw:

> The North Carolina Court of Appeals rejected Schindler's mutuality analysis in *Tillman v. Com. Credit Loans, Inc.*, 177 N.C. App. 568, 629 S.E.2d 865 (2006). . . . "Under North Carolina law, 'mutuality' merely requires consideration on each side of a contract. Mutuality does not require that each of the contract terms must apply equally to both parties to be enforceable." *Id.*
>
> In *Senior Management, Inc. v. Capps*, the Fourth Circuit Court of Appeals reviewed an arbitration provision providing: "[a]t the option of [Appellants], any dispute arising out of this agreement

6

> may be referred for Arbitration in accordance with the rules of [sic] American Arbitration Association at their office in Charlotte, North Carolina." 240 Fed. App'x 550, at 552. The district court initially denied appellants' motion to compel arbitration "because it determined that, since the arbitration provision left the decision whether to arbitrate entirely to Appellants' discretion, the provision was 'illusory and unenforceable.'" Id. The court of appeals, however, reversed because **"North Carolina law does not require mutuality of obligation in arbitration agreements,"** explaining that "so long as the contract as a whole is supported by adequate consideration, there is no requirement that an arbitration provision in the contract place an obligation to arbitrate on all parties to the contract." Id. at 552-53 (citing Tillman, 177 N.C. App. at 580; Strategic Outsourcing, Inc. v. Stacks, 176 N.C. App. 247, 251, 625 S.E.2d 800, 803 (2006)

(Document No. 23, pp. 3-4)(emphasis added).

Plaintiff further asserts that Defendant's opposition relies on Maryland law, which is contrary to North Carolina law on the issue of mutuality. (Document No. 23, pp. 4-5) (citing Dan Ryan Builders, Inc. v. Nelson, 682 F.3d 327 (4th Cir. 2012); Noohi v. Toll Bros., 708 F.3d 599 (4th Cir. 2013); and Coady v. Nationwide Motor Sales Corp., 32 F.4th 288 (4th Cir. 2022)). Plaintiff argues that the distinction is important because "North Carolina looks at whether the contract as a whole is supported by consideration and imposes no requirement that the arbitration provision in that contract subject all parties to the same arbitration obligations, which is 'contrary to the law in Maryland on this issue.'" (Document No. 23, p. 5) (quoting Dan Ryan Builders, 682 F.3d at 329-30).

Based on satisfying the required prerequisites, and applying North Carolina law, Plaintiff concludes that the motion to compel arbitration should be granted and this case should be stayed. Id.

The undersigned finds that Plaintiff's arguments and applicable authority are most compelling. In short, the parties' Subcontract allows Plaintiff to have the parties' dispute

determined "by litigation or binding arbitration" and Plaintiff's choice to pursue arbitration is enforceable.

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion To Compel Arbitration And Stay Proceedings" (Document No. 15) is **GRANTED**. This matter is **STAYED**.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Status Report on **January 17, 2025**, and **every ninety (90) days thereafter**, until this case is dismissed or until otherwise ordered by the Court.

**SO ORDERED**.

Signed: November 1, 2024

David C. Keesler
United States Magistrate Judge